1

2

3

4                                UNITED STATES DISTRICT COURT

5                               NORTHERN DISTRICT OF CALIFORNIA

6

7    ELAINE MCCOY,                              Case No.  15-cv-04451-JCS

                 Plaintiff,
8
                                                **ORDER GRANTING MOTION TO**
         v.                                     **DISMISS**
9
                                                Re: Dkt. No. 16
10   NESTLE USA, INC,

                 Defendant.
11

12   **I.      INTRODUCTION**

13          "The use of child slave labor in the Ivory Coast is a humanitarian tragedy."  *Doe I v. Nestle*

14   *USA, Inc.*, 766 F.3d 1013, 1016 (9th Cir. 2014).  The fact that major international corporations

15   source ingredients for their products from supply chains involving slavery and the worst forms of

16   child labor raises significant ethical questions.  The issue before this Court, however, is whether

17   California law requires corporations to inform customers of that fact on their product packaging

18   and point of sale advertising.  Every court to consider the issue has held that it does not.  This

19   Court agrees.

20          This is a putative class action in which Plaintiff Elaine McCoy claims that Defendant

21   Nestlé USA, Inc. ("Nestlé") violated California's Unfair Competition Law ("UCL," Cal. Bus. &

22   Prof. Code §§ 17200−17210), Consumers Legal Remedies Act ("CLRA," Cal. Civ. Code

23   §§ 1750−1784), and False Advertising Law ("FAL," Cal. Bus. & Prof. Code §§ 17500−17509) by

24   failing to disclose on the packaging of Nestlé's chocolate products that some of the cocoa used

25   therein originated at farms in Côte d'Ivoire (also known as the Ivory Coast) that use slave labor

26   and the worst forms of child labor.  Nestlé moves to dismiss all claims.  The Court held a hearing

27

28

United States District Court
Northern District of California

on March 18, 2016.[1]  For the reasons stated below, Nestlé's Motion is GRANTED, and this action is dismissed with prejudice.[2]

## II.     BACKGROUND

### A.     Allegations of the Complaint[3]

Côte d'Ivoire is the world's largest producer of cocoa beans, the raw ingredient for chocolate, and supplies 40% of global cocoa production and 47% of total imports to the United States.  Compl. (dkt. 1) ¶¶ 20, 51.  Slave labor and the worst forms of child labor are common in Ivorian cocoa production, as is well documented by United States government agencies, academic studies, nonprofit organizations, investigative journalists, and former laborers.  *Id.* ¶¶ 5−9, 24−26, 33−47.  Children are frequently injured in the course of dangerous work involving machetes, chemicals, and heavy loads, and workers (both children and adults) may be beaten, whipped, and locked in to prevent escape.  *Id.* ¶¶ 24−26.  The Ninth Circuit has also acknowledged the existence of such conditions.  *Id.* ¶ 27; *Doe I*, 766 F.3d at 1016.

Nestlé is one of the largest food companies in the United States and sells a number of popular chocolate products.  *Id.* ¶ 3.  In 2001, members if the United States chocolate industry including Nestlé signed a voluntary protocol, negotiated by Representative Eliot Engel and Senator Tom Harkin, to develop standards for certifying chocolate produced without labor abuses.  *Id.* ¶ 28.  After failing to meet the initial 2005 deadline, the industry extended the self-imposed deadline to 2008, then to 2010, and then to 2020.  *Id.* ¶¶ 30−32.

Despite adopting "Corporate Business Principles" that require ethical business practices in its supply chain and a "Supplier Code" that "strictly prohibit[s]" child labor and forced labor, Nestlé sources much of its chocolate from Côte d'Ivoire through a multi-level supply chain of independent growers, cooperatives, distributors, and other intermediaries.  *Id.* ¶¶ 4, 11, 21, 50, 52, 60−66, 52.  Nestlé acknowledges child and slave labor in its Ivorian supply chain, including

---

[1] The Court also heard argument in *Dana v. The Hershey Company*, No. 15-cv-4453, which involves different parties but substantially similar claims and arguments.  A separate order has been published concurrently in that case.

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

[3] McCoy's allegations are taken as true in the context of a motion to dismiss.

United States District Court
Northern District of California

children engaged in unsafe work, but does not disclose the existence of those labor abuses on its product labels. *Id.* ¶¶ 21, 53. Certain Nestlé products also advertise that Nestlé "works with [a certification program that does not permit child labor] to help improve the lives of cocoa farmers." *Id.* ¶¶ 54−55. Although McCoy disputes the accuracy of that certification, her claims here are based only on Nestlé's omissions, not on any affirmative misrepresentations. *Id.* ¶ 57; Opp'n (dkt. 18) at 12 n.64.

McCoy "has purchased Nestlé Chocolate Products at various retail stores including Sam's Club and Safeway in and around Vacaville, and Fairfield, California from 2011 through present." *Id.* ¶ 14. Citing studies showing that consumers will pay a premium for ethically produced coffee, clothing, and seafood, *id.* ¶¶ 67−71, McCoy alleges that she and other customers "would not have purchased Nestlé's Chocolate Products or paid as much for them" if Nestlé had disclosed labor violations on the product labels. *Id.* ¶ 11, *see also id.* ¶¶ 14, 49, 78, 93, 107, 118.

The Complaint includes three claims, under the UCL, the CLRA, and the FAL, respectively. The UCL claim is based on three separate theories arising from Nestlé's failure to disclose labor abuses in its supply chain on the packaging of its chocolate products: (1) the omission is "unlawful," because it violates the CLRA, *id.* ¶ 86; (2) the omission is "unfair," because the abusive labor practices themselves are immoral and the failure to disclose them impairs competition and prevents consumers from making informed decisions, *id.* ¶ 87; and (3) the omission is "fraudulent" because it is likely to deceive a reasonable consumer and the true facts would be material to reasonable consumer, *id.* ¶ 88. The CLRA claim asserts that Nestlé's failure to disclose labor abuses in its supply chain constitutes a misrepresentation of the "source, characteristics, and standard" of the products. *Id.* ¶ 103, *see also id.* ¶¶ 100−02 (citing Cal. Civ. Code § 1770(a)(2), (5), (7)). The FAL claim asserts that Nestlé had a duty to disclose the labor abuses in its supply chain because it had superior knowledge as compared to customers, and because it made "partial representations and/or misrepresentations to the contrary." *Id.* ¶ 114. In her Opposition, McCoy disclaims any theory of an obligation to disclose arising from partial misrepresentations. Opp'n at 12 n.64.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

**B.    Procedural History**

McCoy filed this action on September 28, 2015, seeking to represent herself and other similarly situated consumers who purchased Nestlé chocolate products in the last four years.  *See generally* Compl.  McCoy's counsel also represents plaintiffs who filed similar actions against two other large chocolate manufacturers, Mars and Hershey.  *See Hodsdon v. Mars, Inc.*, No. 3:15-cv-04450-RS (N.D. Cal.); *Dana v. The Hershey Company*, No. 3:15-cv-04453 (N.D. Cal.).  Defendants moved to dismiss in all three cases.  Judge Seeborg granted the motion to dismiss in *Hodsdon*, as discussed in detail below.  The undersigned heard argument on Hershey's motion in *Dana* concurrently with Nestlé's motion in the present case.[4]

**C.    Parties' Arguments**

Nestlé argues that the case must be dismissed for several reasons, starting with the safe harbor doctrine, which provides that plaintiffs cannot use California's consumer protection laws to pursue relief that is foreclosed by other, more specific statutes.  Mot. (dkt. 16) at 8−11.  According to Nestlé, the California Transparency in Supply Chains Act of 2010 (the "Supply Chains Act") bars McCoy's claims because it regulates disclosures related to labor abuses in supply chains and does not require the disclosures McCoy seeks.  *Id.*  McCoy responds that the Supply Chains Act does not specifically permit Nestlé's omissions or bar McCoy's claims, and that the labor violations addressed by that statute (slavery and human trafficking) do not encompass all of the violations at issue here (which also include dangerous but non-slave child labor).  Opp'n at 3−8.

Nestlé also argues that the Court should dismiss the case based on the doctrine of equitable abstention, because: (1) the economic policies at issue are better suited for resolution by legislative

---

[4] Four other cases based on nondisclosure of supply chain labor violations, brought by plaintiffs who also share counsel with McCoy, have been dismissed for failure to state a claim in the Central District of California.  *Wirth v. Mars Inc.*, No. SA CV 15-1470-DOC (KESx), 2016 WL 471234 (C.D. Cal. Feb. 5, 2016); *Barber v. Nestle USA, Inc.*, No. SA CV 15-01364-CJC (AGRx), 2015 WL 9309553 (C.D. Cal. Dec. 9, 2015); *De Rosa v. Tri-Union Seafoods, LLC*, No. CV 15-7540-CJC (AGRx), 2016 WL 524059 (C.D. Cal. Jan. 15, 2016) (summarily dismissing for the reasons stated in *Barber*); *Hughes v. Big Heart Pet Brands*, No. CV 15-8007-CJC (AGRx), 2016 WL 524057 (C.D. Cal. Jan. 15, 2016) (same).  Those cases, all of which concern seafood (or pet food that includes seafood products) rather than chocolate, were decided at least in part based on the safe harbor doctrine, which *Hodsdon*, *Dana*, and this Order decline to reach.  The four Central District cases are presently pending on appeal before the Ninth Circuit.

bodies or administrative agencies; (2) enforcement of injunctive relief would be unduly burdensome for the Court due to the need to monitor foreign labor conditions; and (3) the foreign relations issues implicated by McCoy's claims require a uniform federal policy and should be entrusted to the legislative or executive branch. Mot. at 11−13. McCoy argues that the subject matter of the case falls within the experience and competence of the Court, and that overseeing an injunction requiring Nestlé to change its labeling would not be unduly burdensome. Opp'n at 8−10.

Next, Nestlé argues that it has no duty to disclose labor conditions in its supply chain because the information at issue does not relate to product safety, and because Nestlé did not have exclusive knowledge, actively conceal the information, make misleading partial representations, or have a fiduciary relationship with McCoy. Mot. at 14−18. Nestlé contends that all of McCoy's claims fail because, as a matter of law, reasonable consumers are not likely to be deceived by the omission of something that Nestlé had no duty to disclose—and even if it were legally possible, McCoy has not adequately alleged that consumers expect supply chains to be entirely free of labor abuses. *Id.* at 18−19. McCoy responds that the limitation of the duty to disclose to safety issues only applies in post-warranty product defect cases, which this is not, and that a duty arises from Nestlé's superior (albeit not actually exclusive) knowledge of labor abuses in its supply chain. Opp'n at 10−14. She "does not here contend that Nestlé's partial disclosures give rise to its duty to disclose." *Id.* at 12 n.64. McCoy also argues that she has adequately pled that, absent disclosure to the contrary, consumers would expect that chocolate is not produced using slave labor or the worst forms of child labor, and that reliance is at least a question of fact. *Id.* at 14−16.

Turning to McCoy's specific claims, Nestlé contends that the FAL only governs affirmative misrepresentations, not omissions. Mot. at 19. McCoy disputes that proposition and argues that some cases have allowed FAL claims to proceed based on omissions. Opp'n at 16.

Nestlé argues that McCoy's CLRA claim fails because omissions regarding labor abuses do not fall within the statutory provisions she invokes—which govern representations regarding the "source, characteristics, and standard" of the chocolate, *see* Compl. ¶ 103—and that she therefore also cannot proceed on a UCL claim for "unlawful" conduct based on her CLRA claim.

5

United States District Court
Northern District of California

1    Mot. at 17−18.  McCoy contends that "Nestlé's failure to disclose that its supply chain is not child

2    and slave free is likely to deceive a reasonable consumer regarding the chocolate's source (from

3    plantations using child and slave labor) and characteristics/standard (produced by child and slave

4    labor)."  Opp'n at 17.

5         As for "unfair" conduct under the UCL, Nestlé contends that McCoy cannot succeed under

6    any of the tests that courts have used, because she has not identified a legislative policy against

7    Nestlé's non-disclosure, nor has she plausibly alleged that the harm caused was "substantial" or

8    that it outweighed the utility of Nestlé's conduct.  Mot. at 19−21.  McCoy argues that the labor

9    abuses in Nestlé's supply chain contravene legislatively declared policies in the form of United

10    Nations prohibitions of forced labor and the worst forms of child labor that the United States has

11    ratified, and that those abuses are immoral and unethical.  Opp'n at 18−19.  She also contends that

12    the harm of deceiving consumers outweighs the cost to Nestlé of changings its product labeling.

13    *Id.* at 19.  Nestlé notes in reply that the United Nations sources that McCoy cites relate only to

14    labor practices, not product labeling.  Reply (dkt. 27) at 12.

15         According to Nestlé, McCoy lacks both Article III and statutory standing to bring any of

16    her claims because she cannot trace the cocoa used in the specific chocolate products she bought

17    back to a specific plantation, and thus cannot know whether the products she bought were

18    produced with slave or child labor.  Mot. at 21−22.  Nestlé contends that without that knowledge,

19    whether the products McCoy bought were misrepresented (even under McCoy's theory of

20    misrepresentation by omission) is uncertain, and if they were not, McCoy has not suffered any

21    cognizable injury.  *Id.*  McCoy responds that her injury and standing arise from misrepresentation

22    of the supply chain for the chocolate, and if Nestlé had better disclosed the labor abuses in the

23    supply chain, she would not have bought the products regardless of whether she knew the origin of

24    the cocoa in a specific item.  Opp'n at 19−21.  McCoy relies on case law holding that a consumer

25    who purchased or paid more for a product based on misrepresentations has both constitutional and

26    statutory standing to bring claims under California's consumer protection laws.  *Id.* at 20−21.

27    (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013); *Kwikset Corp. v. Superior Court*,

28    51 Cal. 4th 310, 330 (2011)).

United States District Court
Northern District of California

1  Nestlé also argues that McCoy lacks standing because she has not adequately alleged

2  reliance on any misrepresentation. Mot. at 22. According to Nestlé, McCoy has not alleged that

3  she saw or relied on any misleading affirmative representations, nor that she would have read the

4  disclosure she seeks on Nestlé's product packaging. *Id.* McCoy contends that her claim is based

5  only on omission of material facts and that her Complaint adequately alleges that she would not

6  have bought Nestlé products if the packaging had disclosed severe labor abuses in Nestlé's supply

7  chain. Opp'n at 20–21.

8  Next, Nestlé argues that McCoy's Complaint does not satisfy the heightened pleading

9  standard of Rule 9(b) of the Federal Rules of Civil Procedure because it does not identify the

10  specific products McCoy purchased, provide a complete list of the products she is suing over,

11  include copies of packaging for all of the products at issue. Mot. at 23. McCoy argues that her

12  Complaint meets the pleading standard that courts have applied in fraudulent omission cases, and

13  that she need not list the specific products she purchased because "the omission is identical"

14  across Nestlé's product line. Opp'n at 21–23.

15  Finally, Nestlé argues that requiring the labeling McCoy seeks would compel speech in

16  violation of the First Amendment. Mot. at 23–25. McCoy contends that laws against misleading

17  advertising are constitutional, and that a mere rational basis is required to support laws compelling

18  affirmative factual product labeling to avoid misleading consumers. Opp'n at 23–25 (citing, *e.g.*,

19  *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985)). Nestlé responds that McCoy

20  has not alleged any misleading affirmative representations that require labeling to redress

21  consumer confusion, and that the disclosure McCoy seeks is not "'purely factual and

22  uncontroversial.'" Reply at 13–15 (quoting *Zauderer*, 471 U.S. at 651).

23  **D.   *Hodsdon v. Mars, Inc.***

24  In *Hodsdon*, Judge Seeborg granted a motion by chocolate manufacturer Mars, Inc. to

25  dismiss claims very similar those in the case at hand. *Hodsdon v. Mars, Inc.*, __ F. Supp. 3d __,

26  No. 15-CV-04450-RS, 2016 WL 627383 (N.D. Cal. Feb. 17, 2016). As a preliminary matter, the

27  court held that the plaintiff had standing because: (1) "California law permits litigants to pursue

28  claims under the UCL, CLRA, and FAL if they show . . . that 'the consumer paid more than he or

7

she actually valued the product'"; (2) the plaintiff adequately alleged that the use of forced labor in the supply chain caused him to devalue the product even if he could not prove that forced labor was used to produce the specific chocolate products that he purchased; and (3) the plaintiff adequately alleged that he saw the product labels before he purchased the products. *Id.* at *3 (quoting *Hinojos*, 718 F.3d at 1104). Turning to the merits, however, the court held that the plaintiff failed to state a claim under California law.

With respect to the FAL claim, the court reconciled cases holding that omissions were not actionable with others that allowed FAL claims based on omissions to proceed, ultimately determining that omissions accompanying misleading incomplete statements are actionable, but omissions with no corresponding statements are not. *Id.* at *4. *Compare Norcia v. Samsung Telecomms. Am.*, LLC, No. 14-CV-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015) ("There can be no FAL claim where there is no 'statement' at all."), *and Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (same), *with In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014) (denying motion to dismiss where defendant claimed to have taken steps to secure information but failed to disclose security deficiencies) *and Tait v. BSH Home Appliances Corp.*, No. SACV 10-00711 DOC (ANx), 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011) (denying a motion to dismiss where the defendant marketed a washing machine as "sanitary" but failed to disclose its tendency to accumulate mold). Because the plaintiff in *Hodsdon* "asserted the former type of claim, i.e., that Mars violated the FAL by failing to issue any statement at all," the court dismissed the claim. *Hodsdon*, 2016 WL 627383, at *4.

Next, the court turned to the plaintiff's CLRA claim and his claim under the "unlawful" prong of the UCL, which was based on the purported CLRA violation. *Id.* at *5−6. Noting the Ninth Circuit's holding that "California courts have generally rejected a broad obligation to disclose," the court looked to whether Mars had any such obligation. *Id.* at *5. The court held that despite one case to the contrary, "the overwhelming majority of courts to consider the issue" have held that omissions are only actionable under the CLRA if they relate to product safety or defects. *Id.* at *5−6. Because the omissions at issue related instead to "admittedly horrific labor

8

practices" in the supply chain, the court dismissed the plaintiff's CLRA claim and the "unlawful conduct" aspect of the UCL claim that derived from it. *Id.* at *6.

The plaintiff also brought UCL claims based on the "fraudulent" and "unfair" prongs of the statute. The court followed two California appellate decisions holding that omissions cannot satisfy the "fraudulent" prong unless there was a duty to disclose, and therefore dismissed that claim. *Id.* at *6 (citing *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007); *Daugherty v. Am. Honda Co.*, 144 Cal. App. 4th 824, 838 (2006)). As for the "unfair" prong, the court held that the plaintiff's complaint did not satisfy any of the tests used by California courts to assess such claims: (1) unlike the underlying labor conditions themselves, the lack of disclosure could not be said to be "'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,'" because the harm was merely the purchase of a chocolate bar and the information that was absent from the packaging was readily available elsewhere; and (2) again unlike the underlying labor conditions, the harm from lack of disclosure was not tied to any established public policy expressed in "'specific constitutional, statutory, or regulatory provisions.'" *Id.* at *7 (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999); *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014)). The court therefore dismissed the UCL claim in its entirety.

Because the plaintiff failed to state a claim for the reasons summarized above, the court did not reach Mars's argument that the Supply Chains Act creates a safe harbor, but expressed doubt that any such harbor is as broad as Mars contended. *Id.* at *8−9. The court found that amendment would be futile and denied leave to amend. *Id.* at *9. Hodsdon's appeal of Judge Seeborg's decision is currently pending before the Ninth Circuit.

## III.   ANALYSIS

### A.   Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage

9

1    is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading

2    which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim

3    showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

4          In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

5    takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

6    non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

7    Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

8    would support a valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

9    1990).  A complaint must "contain either direct or inferential allegations respecting all the material

10   elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v.*

11   *Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

12   1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

13   of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

14   (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked

15   assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

16   Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient

17   factual allegations to "allow[] the court to draw the reasonable inference that the defendant is

18   liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 570).

19         Rule 9(b) of the Federal Rules of Civil Procedure sets a heightened pleading standard for

20   claims based on fraud.  "In alleging fraud or mistake, a party must state with particularity the

21   circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Ninth Circuit has held

22   that in order to meet this standard, a "complaint must specify such facts as the times, dates, places,

23   benefits received, and other details of the alleged fraudulent activity."  *Neubronner v. Milken*, 6

24   F.3d 666, 672 (9th Cir. 1993); *see also McMaster v. United States*, 731 F.3d 881, 897 (9th Cir.

25   2013).  The heightened standard does not apply to "[m]alice, intent, knowledge, and other

26   conditions of a person's mind."  Fed. R. Civ. P. 9(b).

27         Nestlé also moves to dismiss under Rule 12(b)(1) on the basis that the Court lacks

28   jurisdiction because McCoy lacks Article III standing.  *See* Mot. at 8.  Where, as here, a

1    jurisdictional challenge is based on the allegations of a plaintiff's complaint rather than on

2    extrinsic evidence, courts "assume [the plaintiff's] allegations to be true and draw all reasonable

3    inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "[T]he inquiry is

4    therefore much like a Rule 12(b)(6) analysis." *Animal Legal Def. Fund v. HVFG LLC*, 939 F.

5    Supp. 2d 992, 997 (N.D. Cal. 2013).

6        **B.    Standing**

7        Nestlé argues that McCoy lacks Article III and statutory standing to pursue these claims

8    because she does not and cannot allege that the specific products she purchased were made from

9    cocoa produced with the labor abuses at issue in this case—slave labor or the worst forms of child

10    labor—and therefore fails to allege an actual, particularized injury.  Mot. at 21−22.  The parties

11    agree that Nestlé currently cannot trace the cocoa used in a particular Nestlé chocolate product to a

12    specific plantation, and there is thus no way to know what labor practices were used in its

13    production.  *See* Compl. ¶ 11; Mot. at 22.  McCoy argues that she has standing because she would

14    have either not purchased or paid less for Nestlé's products if she had known that the *supply chain*

15    involved the labor abuses at issue, regardless of where the cocoa in a particular chocolate bar

16    originated.  Opp'n at 20−21.  Judge Seeborg held that the plaintiff in *Hodsdon* had standing under

17    similar circumstances, and the Court agrees that McCoy has standing here.  *See Hodsdon*, 2016

18    WL 627383, at *3.

19        The issue of Article III standing is straightforward.  "[W]hen, as here, 'Plaintiffs contend

20    that class members paid more for [a product] than they otherwise would have paid, or bought it

21    when they otherwise would not have done so' they have suffered an Article III injury in fact."

22    *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting *Mazza v. Am. Honda*

23    *Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)) (second alteration in original).

24        McCoy also has standing under the California statutes at issue.  The UCL and FAL require

25    that private plaintiffs "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result

26    of the unfair competition" or false advertising.  *Hinojos*, 718 F.3d at 1103 (quoting Cal. Bus. &

27

28

United States District Court
Northern District of California

11

Prof. Code § 17204 (UCL); citing *id.* § 17535 (FAL)) (alterations in original).[5]  In *Hinojos*, the

Ninth Circuit examined the California Supreme Court's decision in *Kwikset Corp. v. Superior*

*Court*, which held that a "'consumer who relies on a product label and challenges a

misrepresentation contained therein can satisfy the standing requirement of [the UCL and the

FAL] by alleging . . . that he or she would not have bought the product but for the

misrepresentation,'" and that "such allegations are sufficient to establish economic injury within

the meaning of [those statutes]."  *Id.* at 1105 (quoting *Kwikset*, 51 Cal. 4th 310, 330 (2011))

(ellipsis in original).

In both *Kwikset*, where the defendant marketed locks as "Made in U.S.A." despite some

foreign components and assembly work, and *Hinojos*, where the defendant allegedly advertised its

normal prices as "reduced," plaintiffs who relied on those representation had standing to sue under

the UCL and FAL.  *Id.* at 1107; *Kwikset*, 51 Cal. 4th at 330.  Those courts also listed a number of

other scenarios where a plaintiff's reliance on false advertising could give rise to standing: "meat

falsely labeled as kosher or halal, wine labeled with the wrong region or year, blood diamonds

mislabeled as conflict-free, and goods falsely suggesting they were produced by union labor."

*Hinojos*, 718 F.3d at 1105 (citing *Kwikset*, 51 Cal. 4th at 328−29).  McCoy's claim that she would

have paid less for (or declined to purchase) Nestlé's products but for Nestlé's misrepresentations

of the labor practices in its supply chain fits well within these examples.

The Ninth Circuit's decision in *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009)—

which Nestlé does not discuss in its briefs but which Hershey relies on to make a similar argument

in *Dana*—does not deprive McCoy of standing.  In that case, the plaintiffs alleged that Apple

violated the UCL by selling iPods that were capable of producing dangerous volume levels and

thus causing hearing loss.  *Id.* at 957.  The Ninth Circuit affirmed the district court's holding that

the plaintiffs failed to show a particularized and actual injury sufficient for standing under the

UCL—despite the plaintiffs' argument that the risk of hearing loss diminished the value of the

---

[5] The CLRA allows a consumer who has suffered "any damage" to sue, and "any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori*, have suffered 'any damage' for purposes of establishing CLRA standing."  *Hinojos*, 718 F.3d at 1107−08.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   iPods—in part because "the alleged loss in value . . . rests on a hypothetical risk of hearing loss to

2   other consumers who may or may not choose to use their iPods in a risky manner," and the

3   plaintiffs did "not claim that they, or anyone else, have suffered or [were] substantially certain to

4   suffer hearing loss from using an iPod." *Id.* at 959−62. Here, in contrast, McCoy alleges that the

5   value of the chocolate products was diminished because consumers did not wish to support a

6   supply chain that included severe labor abuses. The alleged damage was therefore done *by the*

7   *purchase itself*, not by any contingency that might happen after the purchase.

8           Nestlé argues, essentially, that a UCL claim based on misrepresentation of labor practices

9   can only succeed where a plaintiff is *certain* that the objectionable practice was used to produce

10  the specific item that the plaintiff purchased. *See* Mot. at 21−22. Stepping back from the fact

11  pattern of this case, that argument would dictate that even if Nestlé had—hypothetically—

12  concealed Ivorian labor conditions from its customers, falsely labeled all of its chocolate as

13  certified to be free of child labor, and run a fraudulent national ad campaign touting its child-

14  labor-free chocolate, a customer who relied on that false promotion would lack standing to sue for

15  fraudulent business practices and false advertising so long as some fraction of Nestlé's cocoa met

16  those descriptions and the customer was unable to tell what labor conditions produced the cocoa in

17  the actual product he or she purchased. Such a result would undermine the holding of *Hinojos* and

18  *Kwikset*. The difference between that hypothetical scenario and McCoy's allegation of mere

19  omission is critical to the outcome of the present motion, as discussed in the sections below, but it

20  is a difference relevant to the merits of the claims, not to standing.

21          Similarly, to use some of the examples given in *Hinojos and Kwikset*, it would be a bizarre

22  result if sellers advertising food as halal or kosher, diamonds as conflict-free, or products as union-

23  made could knowingly mix compliant and non-compliant products with impunity so long as there

24  was no way for a buyer to trace the specific item he or she purchased back to the source. The

25  Eighth Circuit has nevertheless adopted that rule. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d

26  1025, 1030−31 (8th Cir. 2014) (holding that customers lacked Article III standing to bring a claim

27  based on allegedly false advertising of a product as using 100% kosher beef, where the plaintiffs

28  could not show that the specific products they purchased contained non-kosher beef). This Court

13

United States District Court
Northern District of California

1    respectfully disagrees with that result.  In this Court's view, if a customer has paid a premium for

2    an assurance that a product meets certain standards, and the assurance turns out to be meaningless,

3    the premium that the customer has paid is an actual, personal, particularized injury that is

4    cognizable under Article III.  *See Hinojos*, 718 F.3d at 1104.

5            "'For a significant segment of the buying public, labor practices do matter in making

6    consumer choices.'"  *Kwikset*, 51 Cal. 4th at 329 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 969

7    (2002)).  It is plausible that a consumer would place less value on a product produced from a

8    supply chain involving severe labor abuses.  McCoy alleges that she purchased products or paid a

9    higher price for them because she was deceived regarding the labor practices in the supply chain.

10   That actual, particularized injury is sufficient to establish standing.

11           Nestlé also argues that McCoy lacks standing because she has not sufficiently alleged

12   reliance.  Mot. at 22.  The Court agrees with McCoy that, at least for the purpose of Article III

13   standing, McCoy adequately pleads reliance by alleging that she saw the product labeling and

14   would not have purchased the products if labor abuses in the supply chain had been disclosed.  *See*

15   Compl. ¶ 14.  Whether Nestlé had a duty to disclose those conditions, *see* Mot. at 22, is relevant to

16   whether the Complaint states a claim on which relief can be granted, but is not an issue of

17   standing.

18       **C.    CLRA Claim**

19           The CLRA prohibits certain enumerated "unfair methods of competition and unfair or

20   deceptive acts or practices undertaken by any person in a transaction intended to result or which

21   results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).

22   McCoy argues that Nestlé's failure to disclose labor abuses on its packaging violates subsection

23   (a)(2) by "[m]isrepresenting the source" of the chocolate, subsection (a)(5) by "[r]epresenting that

24   goods . . . have . . . characteristics . . . which they do not have," and subsection (a)(7) by

25   "[r]epresenting that goods . . . are of a particular standard."  *Id.* § 1770(a)(2), (5), (7); *see* Compl.

26   ¶¶ 100−03; Opp'n at 17.  In her Opposition, McCoy makes clear that these theories are based on

27   "Nestlé's omission of known child and slave labor in its supply chain," and that she "does not here

28   contend that Nestlé's partial misrepresentations give rise to its duty to disclose."  Opp'n at 12

14

n.64.

"[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006). "California courts have generally rejected a broad obligation to disclose . . . ." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). In *Wilson*, the Ninth Circuit held that, absent affirmative misrepresentations, an obligation to disclose under California law extends only to matters of product safety. *Id.* at 1141−43 (examining *Daugherty*, 144 Cal. App. 4th at 836, and subsequent decisions); *see also Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009) (unpublished and non-precedential) ("A manufacturer's duty [of disclosure] to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.").

At least one district court decision has limited *Wilson* to cases where a product was covered by a warranty that expired before the defect became apparent. *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1221 (C.D. Cal. 2012). Central to the Central District's holding was its determination that "[t]he Ninth Circuit acknowledged that its requirement of a safety issue does not necessarily apply outside the products defect context where warranty protections are not available," and that *Wilson* "list[ed] cases where a safety issue was not required to trigger a duty to disclose." *Id.* (citing *Wilson*, 668 F.3d at 1142). The Court respectfully disagrees with *Stanwood*'s reading of *Wilson*. The cases listed at the page cited in *Wilson* by *Stanwood* do not support *Stanwood*'s holding: four cases explicitly based the materiality of an omission at least in part on whether it related to safety,[6] and the Ninth Circuit characterized the remaining two[7] as

---

[6] *O'Shea v. Epson Am., Inc.*, No. CV 09–8063 PSG (CWx), 2011 WL 3299936, at *7–9 (C.D.Cal. July 29, 2011); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) ("[F]or the omission to be material, the failure must pose 'safety concerns' . . . ."), *aff'd*, 462 F. App'x 660 (9th Cir. 2011); *In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 n.*. (N.D. Cal. 2007) ("Moreover, plaintiffs successfully allege that the potential for failed speedometers constitutes a safety hazard.").

[7] *Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG (MLGx), 2009 WL 5788762 (C.D.Cal. June 12, 2009); *Bristow v. Lycoming Engines*, No. CIV. S-06-1947 LKK GGH, 2007

1    having "arguably concerned safety issues." *Wilson*, 668 F.3d at 1142 & n.2.  Accordingly, the

2    Court does not agree that *Wilson* is limited to cases where a warranty once existed but has since

3    expired.  There are cases holding that a manufacturer has a greater duty to disclose defects that

4    arise *during* a product's express warranty period.  *E.g.*, *Collins v. eMachines, Inc.*, 202 Cal. App.

5    4th 249, 257−58 (2011); *see also Wilson*, 668 F.3d at 1142 n.1 (discussing *Tietsworth v. Sears,*

6    *Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010)).  But there is no allegation that Nestlé

7    made any warranty of its chocolate products that would be relevant in this case.[8]

8        The Court agrees with Judge Seeborg's conclusion that the weight of authority limits a

9    duty to disclose under the CLRA to issues of product safety, unless disclosure is necessary to

10   counter an affirmative misrepresentation.  *See Hodsdon*, 2016 WL 627383, at *6 (declining to

11   follow *Stanwood* in light of "overwhelming authority to the contrary," and collecting cases).  The

12   Court also concludes that a plain reading of *Wilson* governs this case, and this "Court is not free to

13   deviate from the Ninth Circuit's construction of California law in *Wilson* absent a subsequent

14   interpretation from California's courts that the interpretation was incorrect." *Rasmussen v. Apple,*

15   *Inc.*, 27 F. Supp. 3d 1027, 1036 (N.D. Cal. 2014) (following *Wilson* despite concluding that its

16   basis in California law is "subject to reasonable debate") (citing *Kona Enters., Inc. v. Estate of*

17   *Bishop*, 229 F.3d 887, 884 n.7 (9th Cir. 2000)).  Further, the Court agrees with Judge Seeborg and

18   Nestlé that some bright-line limitation on a manufacturer's duty to disclose is sound policy, given

19   the difficulty of anticipating exactly what information some customers might find material to their

20   purchasing decisions and wish to see on product labels.  *See Hodsdon*, 2016 WL 627383, at *6

21   ("[*Stanwood*'s and McCoy's] definition of a material omission has stunning breadth, and could

22   leave manufacturers (chocolate or otherwise) little guidance about what information, if any, it

23   must disclose to avoid CLRA or UCL liability."); Reply at 8.  There are countless issues that may

24   be legitimately important to many customers, and the courts are not suited to determine which

25

26   _____
     WL 1106098 (E.D.Cal. Apr. 10, 2007).

27       [8] *Wilson* also acknowledges cases recognizing a broader duty of disclosure in the sale of
     services, rather than products.  *Wilson*, 668 F.3d at 1143 (citing, *e.g.*, *In re Mediscan Research,*
28   *Ltd.*, 940 F.2d 558 (9th Cir. 1991)).  The chocolate products at issue in the present case are
     products, not services.

United States District Court
Northern District of California

1   should occupy the limited surface area of a chocolate wrapper.

2        A duty to disclose under California law does not extend to all "information [that] may

3   persuade a consumer to make different purchasing decisions." *Hodsdon*, 2016 WL 627383, at *6

4   (citing *Wirth*, 2016 WL 471234, at *5−6).  Because McCoy does not allege any omission of

5   known dangers to the safety of customers, there is no duty to disclose applicable to this case, and

6   McCoy's CLRA claim is therefore DISMISSED.  A contrary result would create "a broad

7   obligation to disclose," which "California courts have generally rejected." *Wilson*, 668 F.3d at

8   1141.

9        Even if that were not so, the parties agree McCoy would still need to show one of the

10  following to support a duty to disclose: (1) a fiduciary relationship between Nestlé and McCoy;

11  (2) that Nestlé had "exclusive knowledge of material facts not known or reasonably accessible to"

12  its customers; (3) that Nestlé actively concealed a material fact; or (4) that Nestlé had made

13  misleading partial representations.  Opp'n at 11 (quoting *Doe v. SuccessfulMatch.com*, 70 F. Supp.

14  3d 1066, 1076 (N.D. Cal. 2014)); Mot. at 15.  McCoy relies solely on the "exclusive knowledge"

15  test.  Opp'n at 12−14.  But even if "courts do not apply 'exclusivity' with . . . rigidity," *see*

16  *Johnson v. Harley-Davidson Motor Co. Grp.*, 285 F.R.D. 573, 583 (E.D. Cal. 2012), it is difficult

17  to see how *any* definition of "exclusive knowledge" could include a case where, by McCoy's own

18  allegations: Nestlé acknowledges on a public website its suppliers' use of slave labor and the

19  worst forms of child labor, Compl. ¶ 21; the industry acknowledged the issue in the Harkin-Engel

20  Protocol in 2001—more than *ten years* before the statute of limitations period for McCoy's CLRA

21  claim—and has repeatedly admitted its failure to even develop a comprehensive certification

22  system in the years since, *id.* ¶¶ 28−32; and in 2006 the United States Department of Labor

23  commissioned Tulane University to publish reports detailing labor abuses in the chocolate

24  industry supply chain, *id.* ¶¶ 33−37; among other public disclosures detailed in the Complaint.

25        Further, even if McCoy could adequately plead that Nestlé had a duty to disclose the labor

26  abuses in its supply chain on its product labels, it is far from clear that such information falls

27  within the categories of representations governed by the CLRA.  McCoy invokes provisions

28  barring misrepresentation of the "source," "characteristics," and "standard" of a product.  Opp'n at

United States District Court
Northern District of California

17

17 (citing Cal. Civ. Code § 1770(a)(2), (5), (7)).  While the CLRA provides that it "shall be liberally construed and applied to promote its underlying purposes" of consumer protection, Cal. Civ. Code § 1760, it does not explicitly discuss representations regarding labor practices, *see id.* § 1770(a), and McCoy cites no authority holding that any of the enumerated categories she relies on are so broad as to encompass labor abuses.  Because the Court holds that Nestlé did not have a duty to disclose labor abuses in its supply chain on its product labels, the Court declines to resolve whether misrepresentations regarding labor practices can fall within the scope of the CLRA.

### D.    UCL Claim

California's UCL prohibits unfair competition, defined as "any unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  McCoy brings her claim under each of these prongs, and Nestlé argues that each must be dismissed.

The "unlawful" prong of McCoy's Complaint is based solely on Nestlé's purported violation of the CLRA.  Compl. ¶ 86.  As discussed above, the Court holds that McCoy fails to state a CLRA claim.  Nestlé's Motion is therefore GRANTED as to this prong of McCoy's UCL claim.

The "fraudulent" prong fails for similar reasons.  As Judge Seeborg noted in *Hodsdon*, California courts have held that "'[a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.'"  *Hodsdon*, 2016 WL 627383, at *6 (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007)); *see also Daugherty*, 144 Cal. App. 4th at 838 ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL.").  Because, as discussed above, the Court holds that Nestlé had no affirmative duty to disclose severe labor abuses in its supply chain on its product labels, Nestlé's Motion is GRANTED as to the "fraudulent" prong of McCoy's UCL claim.

That leaves the "unfair" prong, the test for which remains somewhat unsettled in the California courts.  Courts previously held a practice to be "'unfair' . . . when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.

App. 4th 861, 886−87 (1999) (citation and internal quotation marks omitted).  "This test involves balancing the harm to the consumer against the utility of the defendant's practice."  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (citing *S. Bay*, 72 Cal. App. 4th at 886).  The California Supreme Court, however, found that the *South Bay* test was "too amorphous and provide[d] too little guidance to courts and businesses" in a UCL case between competitors, and held instead that:

> When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 185, 187.  The *Cel-Tech* court explicitly declined to decide what test applied to actions brought by consumers, as opposed to by competitors.  *Id.* at 197 n.12.

In the years since *Cel-Tech*, some courts have continued to use the *South Bay* test for cases brought by consumers, while others have followed *Cel-Tech*'s lead and "require[d] that the unfairness be tied to a 'legislatively declared' policy," *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007), or in other words, "'that the UCL claim be tethered to specific constitutional, statutory, or regulatory provisions,'" *Hodsdon*, 2016 WL 627383, at *7 (quoting *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014)).  "Absent guidance from the California courts about the proper definition of an 'unfair' business practice, federal courts have applied both tests."  *Id.* (citing *Lozano*, 504 F.3d at 736).

The "legislative policies" on which McCoy relies are the United Nations' International Labor Convention No. 182 and the United Nations' Universal Declaration of Human Rights—the former forbidding the worst forms of child labor, the latter forbidding slavery, and both having been ratified by the United States.  Opp'n at 18−19.  The crux of McCoy's claim, however, is not that Nestlé utilized slave labor or the worst forms of child labor, but rather that Nestlé does not disclose the existence of those labor abuses in its supply chain on the packaging of its products.

United States District Court
Northern District of California

McCoy has not identified any legislatively declared policy requiring such disclosure,[9] nor does she cite any authority for the proposition that where some of a manufacturer's suppliers contravene a legislatively established policy, it is "unfair" within the meaning of the UCL for the manufacturer to fail to disclose those violations on its product packaging.  The Court declines to make that leap.

At the hearing, McCoy's counsel suggested for the first time that McCoy could amend her UCL claim to tether the "unfair" prong to the Department of Labor's listing of goods produced with child labor and forced labor, *see* 22 U.S.C. § 7112(b), and to California's Supply Chains Act, which is discussed in more detail below in the context of Nestlé's safe harbor doctrine argument, *see* Cal. Civ. Code § 1714.43.  Although both statutes call for certain disclosures related to labor conditions, neither expresses any policy of disclosure on product labels.  Amending McCoy's Complaint to reference those statutes would not remedy the defects of her UCL claim.

Turning to the *South Bay* balancing test, the distinction between the underlying labor practices and the failure to disclose once again undermines McCoy's claim.  The slave labor and child labor alleged in the Complaint would certainly qualify as "immoral, unethical, oppressive, [and] unscrupulous."  *See S. Bay*, 72 Cal. App. 4th at 887.  But can the same be said about the failure to disclose Nestlé's suppliers' labor abuses on Nestlé's product packaging?  Considering this issue in *Hodsdon*, Judge Seeborg held as follows:

> The harm at issue here is that Hodsdon may not have purchased Mars's chocolate products at all, or would have paid less for them, had he been aware of the prospect for child labor in Mars's supply chain. Such information is, in fact, readily available to consumers on Mars's website. Given that Hodsdon, like any other consumer, has access to information about the source of Mars's cocoa beans, the absence of such information on the packaging is not "substantially injurious to consumers" or necessarily immoral. Granting that the labor practices at issue are immoral, there remains an important distinction between them and the actual harm for which Hodsdon seeks to recover, namely his purchase of Mars's chocolate products absent any disclosure. Mars's failure to disclose information it had no duty to disclose in the first place is not substantially injurious,

---

[9] While McCoy does not argue in the context of the "unfair" prong that either the CLRA or the FAL constitutes such a policy, her arguments that those statutes compel the disclosure she seeks could perhaps be transposed to this claim.  For the reasons discussed above and below in the context of McCoy's CLRA and FAL claims, the Court holds that neither statute represents a policy requiring the disclosure of labor abuses in a supply chain on product labels.

immoral, or unethical, and Hodsdon's UCL claim may therefore not advance.

*Hodsdon*, 2016 WL 627383, at *7.  This Court agrees.  Because McCoy has not adequately alleged a violation of either test for the "unfair" prong, or a violation of the "unlawful" or "fraudulent" prongs, her UCL claim is DISMISSED.

### E.   FAL Claim

The FAL makes it unlawful for any person "to make or disseminate or cause to be made or disseminated before the public . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.  The plain language of the statute—which prohibits *making*, *disseminating*, or *causing* the dissemination of false or misleading statements—does not encompass omissions.  Several cases have therefore held that "[t]here can be no FAL claim where there is no 'statement' at all"—or in other words that an omission, even of material facts, does not violate the FAL.  *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015); *see also Hodsdon*, 2016 WL 627383, at *4; *Stanwood*, 941 F. Supp. 2d at 1222.

McCoy cites three federal district court cases and two California appellate cases that purportedly held to the contrary, allowing FAL claims to proceed based on omissions.  Opp'n at 16 nn.92 & 95.  One of those cases actually dismissed the plaintiff's FAL claim to the extent that it was based on affirmative misrepresentations, and did not address the FAL claim at all in its discussion of the plaintiff's fraudulent omission theory.  *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1135−36, 1140 (N.D. Cal. 2013) (discussing only the CLRA, UCL, and common law in the context of fraudulent omissions, and granting leave to amend only as to those claims).  Both of the California cases were based on claims that print, television, and/or telephone advertising campaigns—which inherently consist of affirmative statements—were misleading for failure to disclose fees associated with financial products or limitations on the use of coupons. *People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219, 1224 (2013) ("The lawsuit claimed there were misleading or deceptive statements in print and television advertising . . . ."); *People v. Toomey*, 157 Cal. App. 3d 1, 17 (1984) ("We encounter little difficulty concluding that Holiday's telephone

United States District Court
Northern District of California

solicitations and newspaper advertisements were likely to deceive consumers.").  One of the other

cases, which Judge Seeborg considered in *Hodsdon*, also involved some degree of affirmative

misrepresentation.  *See Hodsdon*, 2016 WL 627383, at *4.  There, the defendant allegedly

"misrepresented that it would take 'reasonable steps' to secure Plaintiffs' Personal Information

[stored on or transmitted via the defendant's network], and that [it] use[d] industry-standard

encryption to prevent unauthorized access to sensitive financial information," but failed to disclose

that its safeguards were inadequate and network intrusions occurred.  *In re Sony Gaming Networks*

*& Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 990−91 (S.D. Cal. 2014) (quoting the

plaintiffs' complaint; final alteration in original).[10]  That leaves only a decision by the Southern

District of California, which held without analysis that the FAL's prohibition of untrue or

misleading statements also "requires a duty to disclose" in at least certain circumstances.  *Cortina*

*v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1192 (S.D. Cal. 2015) (holding that the plaintiffs

plausibly stated a claim under the FAL where the defendant failed to disclose a "potentially

dangerous substance" in the beverages it sold).

     Although the *Sony* decision did not cite the alleged misrepresentations as the reason for

allowing the plaintiffs' omissions claim to proceed, the Court agrees with Judge Seeborg's

conclusion that the outcome is consistent with a requirement that there be at least *some* affirmative

misrepresentation to support a claim under the FAL.  *See Hodsdon*, 2016 WL 627383, at *4.  As

for *Cortina*, and also to the extent that any of the other cases discussed above are not consistent

with that rule, the Court respectfully disagrees with their interpretation of the FAL's statutory

language.  Because McCoy bases her claims on pure omissions, Opp'n at 12 n.64, she fails to

allege that Nestlé "ma[d]e or disseminate[d] or cause[d] to be made or disseminated" any false or

misleading statement, and thus fails to state a claim under the FAL.[11]

---

[10] Judge Seeborg similarly distinguished a Central District decision allowing a claim to proceed under the FAL where the defendants advertised their washing machines as "Xxtra Sanitary" and "high efficiency," but allegedly concealed that the machines developed mold and were not efficient.  *Hodsdon*, 2016 WL 627383, at *4 (discussing *Tait v. BSH Home Appliances Corp.*, No. SACV 10-00711 DOC (ANx), 2011 WL 3941387, at *1−3 (C.D. Cal. Aug. 31, 2011)).
[11] Moreover, even if the FAL allowed claims based on omissions, McCoy has not established any duty to disclose the information at issue, as discussed above in the context of her CLRA claim.

United States District Court
Northern District of California

1  **F.    Additional Defenses**

2       In light of the holdings above that each of McCoy's claims must be dismissed, the Court

3  need not reach the parties' arguments regarding Nestlé's remaining defenses: that the California

4  legislature has created a "safe harbor" against McCoy's claims by enacting the Supply Chains Act,

5  *see* Mot. at 8−11; that the equitable abstention doctrine requires dismissal, *id.* at 11−13; that the

6  Complaint falls short of the Rule 9(b) pleading standard, *id.* at 23; and that the relief McCoy seeks

7  would compel Nestlé's speech in violation of the First Amendment, *id.* at 23−25.  Although this

8  Order need not and does not resolve any of those issues, the Court briefly addresses the safe

9  harbor argument.

10      "[T]he reach of the UCL is broad, but it is not without limit and may not be used to invade

11 'safe harbors' provided by other statutes."  *Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1125 (2014)

12 (citing *Cel-Tech*, 20 Cal. 4th at 182).  "If the Legislature has permitted certain conduct or

13 considered a situation and concluded no action should lie, courts may not override that

14 determination."  *Id.*  The California Supreme Court has described the scope of the doctrine as

15 follows:

16         A plaintiff may thus not "plead around" an "absolute bar to relief"
17         simply "by recasting the cause of action as one for unfair
           competition." (*Manufacturers Life Ins. Co. v. Superior Court* (1995)
18         10 Cal. 4th 257, 283, 41 Cal. Rptr. 2d 220, 895 P.2d 56.) The rule
           does not, however, prohibit an action under the unfair competition
19         law merely because some other statute on the subject does not, itself,
           provide for the action or prohibit the challenged conduct. To
20         forestall an action under the unfair competition law, another
           provision must actually "bar" the action or clearly permit the
21         conduct.

22 *Cel-Tech*, 20 Cal. 4th at 182−83; *see also Loeffer*, 58 Cal. 4th at 1125 (emphasizing the

23 requirement that another statute "*clearly permit*" the challenged conduct).

24      The Supply Chains Act requires certain large corporations to disclose on their websites

25 their "efforts to eradicate slavery and human trafficking from [their] direct supply chain[s] for

26 tangible goods offered for sale."  Cal. Civ. Code § 1714.43(a)(1).  The statute does not "actually

27 'bar'" any action.  *See Cel-Tech*, 20 Cal. 4th at 183.  Nor does it "clearly permit" any conduct

28 except disclosure of efforts to eradicate slavery and human trafficking.  *See id.*; *Loeffer*, 58 Cal.

4th at 1125.  There are also discrepancies between the subject matter of the Supply Chains Act and the disclosure McCoy seeks in this case.  As Judge Seeborg noted in *Hodsdon*, the statute "concerns slavery and human trafficking, not [other forms of abusive] child labor," and "the legislative history is silent about whether the legislature contemplated disclosure on labels." *Hodsdon*, 2016 WL 627383, at *9.  Moreover, there is a difference between, on one hand, advertising the steps a company has taken to reduce slavery in its supply chain (as the statute requires), and on the other, disclosing that such slavery persists (as McCoy seeks here).  That the legislature mandated the former in certain instances does not necessarily indicate a conclusion that the latter could never be required under existing consumer protection laws.

The Ninth Circuit very recently addressed the safe harbor doctrine in *Ebner v. Fresh, Inc.*, a case alleging deception where a cosmetic product label disclosed the net weight of the product contained in a tube but failed to disclose that "only 75% of that product is reasonably accessible." *Ebner*, __ F.3d __, No. 13-56644, Slip Op. at 8, 2016 WL 1056088, at *3 (9th Cir. Mar. 17, 2016). The panel held that the disclosure of the actual net weight fell within the safe harbor because "[b]oth federal and California law affirmatively require cosmetic manufacturers to include an accurate statement of the net weight of included cosmetic product." *Id.*  The plaintiff also brought an omission claim, however, arguing that failure to explain how much of the product was accessible rendered the accurate weight disclosure "deceptive and misleading." *Id.*  The panel held that "[u]nlike a claim seeking to alter the net weight declaration itself, this [omission] claim does not fall within the safe harbor because there is no law expressly permitting the omission of supplemental statements." *Id.*  Similarly, here, Nestlé has not identified any law "expressly permitting the omission of" disclosures on product labels regarding slave labor and the worst forms of child labor in a product's supply chain.  *See id.*

The Court recognizes that recent district court decisions have held that the Supply Chains Act creates a safe harbor against claims based on non-disclosure of labor abuses in a supply chain. *Wirth*, 2016 WL 471234, at *6−9; *Barber*, 2015 WL 9309553, at *2−5; *De Rosa*, 2016 WL 524059 (summarily dismissing for the reasons stated in *Barber*); *Hughes*, 2016 WL 524057

(same).[12]  Because this Court holds for the reasons stated above that California's consumer protection laws do not create any obligation to make the disclosures McCoy seeks, the question of whether the Supply Chains Act would shield against such a duty is ultimately moot, and the Court need not and does not resolve whether *Wirth* and *Barber* are correct or applicable to the case at hand.  The Court nevertheless echoes Judge Seeborg's skepticism that the safe harbor doctrine is as broad as Nestlé contends.

## IV.    CONCLUSION

For the reasons stated above, McCoy's claims under the CLRA, the UCL, and the FAL fail to state a claim on which relief may be granted, and are therefore DISMISSED.  McCoy has made clear that she does not intend to pursue a claim based on affirmative misrepresentations.  *See* Opp'n at 12 n.64.  The Court therefore finds that leave to amend would be futile, and dismisses this action with prejudice.

**IT IS SO ORDERED.**

Dated: March 29, 2016

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

---

[12] Appeals of all of these cases are currently pending before the Ninth Circuit.